

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMH:SMS
F. #2023R00688

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 18, 2023

<u>By E-mail and ECF</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Franco Alexander Peraza Navas</u>
      <u>Criminal Docket No. 23-CR-396 (MKB)</u>

Dear Judge Levy:

    The government respectfully submits this letter in support of its application for the detention of the defendant Franco Alexander Peraza Navas ("NAVAS"), who will be presented on a seven-count Superseding Indictment charging him with violations of Title 18, United States Code, Sections 2119 (carjacking), 1951(a) (Hobbs Act robbery), and 924(c) (discharging and brandishing firearms during these offenses). As described below, these charges are in connection with a wanton spree of at least two gunpoint carjackings and six gunpoint robberies and attempted robberies that took place between August and December 2023. The defendant is extremely dangerous—having fired his gun in at least three of these offenses. In addition, the potential for a substantial mandatory minimum prison sentence gives him every incentive to flee, and he has no ties to the community to leave behind. Accordingly, as described below, detention is the only means to protect the public and ensure the defendant's appearance in court.

I.  <u>NAVAS's Gunpoint Carjackings and Robberies</u>

    NAVAS engaged in at least two armed carjackings that occurred on or about August 30, 2023 (the "August Carjacking") and September 9, 2023 (the "September Carjacking") and six gunpoint robberies and attempted robberies that occurred on or about September 8, 2023 (the "September Robbery"), October 17, 2023 (the "October Robbery" and the "October Attempted Robbery"), November 5, 2023 (the "November Robbery"), November 22, 2023 and December 9, 2023 (the "December Robbery"). During at least three of his crimes, NAVAS discharged a firearm.

    Through the review of video surveillance footage, GPS and cell-site location data, and witness interviews, and because of a common *modus operandi*, agents determined that the perpetrator of the offenses was NAVAS. Specifically, with respect to some of the crimes, law

enforcement officers were able to track NAVAS to a residential location that required key-card access (the "RESIDENCE"). Officers were then able to compare surveillance footage from the crimes with footage from the RESIDENCE, and cross-reference the footage from the RESIDENCE with key-card access records to confirm that the individual shown was NAVAS.

    For example, the September Robbery occurred on or about September 8, 2023, at around 10:30 a.m., at an establishment located in Sheepshead Bay, Brooklyn ("Commercial Establishment-1"). A masked individual wearing black pants, black shoes white soles and a Nike shopping bag (later determined to be NAVAS) entered Commercial Establishment-1, displayed a silver and black firearm and directed an employee to give him cash or he would shoot the employee. After the employee handed over approximately $878, NAVAS fled on a silver moped (the "Silver Moped"). Screenshots from the surveillance footage and the RESIDENCE are included below, depicting NAVAS committing the robbery charged in Count 2:

*Commercial Establishment-1*

 

*The RESIDENCE Before the Offense*

 

Law enforcement agents confirmed through reviewing the RESIDENCE's access database that the individual leaving the RESIDENCE at that time was NAVAS.

Footage from the RESIDENCE also showed that shortly after the robbery, the same individual returned to the RESIDENCE wearing what appeared to be the same shoes and pants, and carrying what appears to be the brown Nike shopping bag balled up under his arm. Law enforcement agents confirmed through reviewing the RESIDENCE's access database that the individual returning to the RESIDENCE at that time was NAVAS.

As noted previously, during several of the crimes, NAVAS discharged a firearm. For example, during the October Robbery, NAVAS displayed a firearm and discharged one round of ammunition into a bulletproof partition separating jewelry from customers. NAVAS then kicked through the now-damaged bulletproof partition and stole approximately three trays of diamond and gold rings with an approximate value of $375,000 before fleeing on a black moped. Images of NAVAS—aiming his weapon in the direction of his victims—including his face, were captured on surveillance camera footage of the incident and are included below:




Similarly, during the November Robbery, an individual wearing a motorcycle helmet (believed to be NAVAS) entered the establishment, displayed a firearm and discharged at least approximately three rounds of ammunition inside of the store. NAVAS then removed jewelry from the store and fled on a black moped. An image captured from surveillance camera footage is included below:



II.    NAVAS's Evasion of Law Enforcement and Interstate Travel

The investigation indicates that NAVAS as previously fled from law enforcement and may have ties to other states. Specifically, cell-site location information indicates that on at least two occasions, NAVAS has traveled down the I-95 corridor by vehicle to Florida and then returned via the same route to New York. Moreover, on November 3, 2023, law enforcement officers identified NAVAS driving a vehicle in Queens, New York. Officers began to follow NAVAS and turned on their emergency lights and sirens to initiate a traffic stop. At that time, NAVAS ran through a red light, jumped a median and drove quickly in the opposite direction. When officers gave chase in their vehicle, NAVAS ran through two additional red lights, jumped another median, and was able to successfully evade capture—enabling him to commit at least three additional violent offenses before he was apprehended yesterday.

III.   Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The Government is seeking detention pursuant to Title 18, United States Code, Section 3142(f)(1)(A) because the defendant is charged with multiple crimes of violence. Where, as here, the defendant is charged with an offense under Title 18, United States Code, Section 924(c), there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B).

A finding of risk of flight need only be based on a preponderance of the evidence. See United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019) (citations omitted). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). "The Court may . . . consider uncharged conduct in assessing the degree of danger posed by a defendant's release." United States v. Persico, No. 21-CR-004669 (HG), 2023 WL 2565206, at *2 (E.D.N.Y. Mar. 17, 2023) (citations omitted). Further, the concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). To put it differently, defendants "pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community." United States v. Maratea, No. 18-CR-337-5 (WFK), 2018 WL 11191537, at *3 (E.D.N.Y. Nov. 20, 2018). In meeting its burden, the government is "not…bound by the rules of evidence … and may proceed by proffer." See United States v. Williams, 654 Fed. Appx. 3, 3 (2d Cir. 2016) (citing Ferranti, 66 F.3d at 542).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant, including whether the defendant is currently on probation, parole, or other release; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012). Where the evidence of guilt is strong, it provides "a considerable incentive to flee." Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). As noted previously, in this case, there is a rebuttable presumption in favor of detention.

IV.    The Defendant Should Be Detained Pending Trial

The government has met its burden of establishing the defendant's risk of danger to the community and flight sufficient to require his detention. Indeed, the factors specified in the Bail Reform Act weigh heavily in favor of the defendant's detention. The defendant has repeatedly brandished and discharged firearms in the course of armed robberies and carjackings, and in several instances threatened to shoot innocent victims. The defendant faces a substantial prison sentence, is not a United States citizen, and the evidence of his crimes are inescapably compelling. Accordingly, detention is necessary in light of the danger he poses to the community and the risk of flight.

       A.       The Defendant's Release Would Pose a Danger to the Community

The defendant's actions were indisputably dangerous. The defendant committed multiple armed robberies and carjackings, and in several instances discharged firearms. Indeed, no less than 5 separate times, he pulled the trigger of a loaded firearm, firing a bullet to ensure that he got what he wanted. Moreover, the defendant has shown wanton disregard for law enforcement in other ways. After law enforcement officers attempted to initiate a traffic stop, the defendant led them on a vehicle chase that could have caused serious harm to innocent bystanders. Under similar facts, courts have recognized that detention is needed to protect the community. See United States v. Sternquist, No. 22-MJ-1005 (EK), 2022 WL 6162532, at *2 (E.D.N.Y. Oct. 8, 2022) (reversing magistrate judge's order and ordering detention for a defendant who was alleged to have possessed firearms and false law enforcement badges); id. ("[T]he facts proffered by the government, and not contradicted by the defense, show [the defendant] to be a danger to the community by clear and convincing evidence.").

       B.       The Defendant Also Poses a Substantial Flight Risk

The defendant is facing a substantial prison sentence and is not a United States citizen, giving him strong incentive to flee. Moreover, the proof of the defendant's guilt is overwhelming. As described above, among other evidence, video footage and other records confirm that the defendant was the individual who perpetrated the carjackings and robberies. As a result of this evidence of the defendant's guilt, the defendant has considerable incentive to flee—counseling strongly against his release under any conditions. See Millan, 4 F.3d at 1046; Palmer-Contreras, 835 F.2d at 18. Such counsel for detention is strengthened by the fact that the defendant has ties to other states and countries. Moreover, when confronted by agents on November 3, 2023, the defendant *did in fact flee*. Put simply, there is a serious and substantial risk that the defendant will not return to Court should he be released pending trial.

V.       Conclusion

For all of the foregoing reasons, the government respectfully submits that the defendant should be detained.

                                    Respectfully submitted,

                                    BREON PEACE
                                  United States Attorney

                      By:    /s/ Sean M. Sherman
                              Sean M. Sherman
                              Assistant U.S. Attorney
                              (718) 254-6262

cc:       Clerk of Court (by ECF)
           Defense Counsel (by ECF)